# UNITED STATES DISTRICT COURT

for the

_Middle_ District of _NC_

_Civil_ Division

**FILED**
NOV 2 2 2023
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N.C.
By_____

| | |
|---|---|
| Lynn Buie Brooks | )<br>)<br>) |
| _____ | ) |
| Plaintiff(s) | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | )<br>) |
| Brookdale Senior Living | ) |
| Brookdale Corporation | ) |
| _____ | )<br>) |
| Defendant(s) | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | ) |

Case No. _1:23 CV 889_

(to be filled in by the Clerk's Office)

Jury Trial: *(check one)* ☐ Yes ☑ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name           Lynn Buie Brooks
Street Address     460 Sandybrooke Dr.
City and County    High Point, Davidson
State and Zip Code  NC 27265
Telephone Number  (404) 557-4284
E-mail Address     Lbrooly6@yahoo.com

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                   Brookdale High Point Assisted Living

    Job or Title *(if known)*   CNA/Medication Aide

    Street Address        1568 Skeet Club Road

    City and County      High Point, Guilford

    State and Zip Code    NC 27265

    Telephone Number   (336) 869-0026

    E-mail Address *(if known)*

Defendant No. 2

    Name                   Brookdale Senior Living Corporate

    Job or Title *(if known)*

    Street Address        111 Westwood Pl #y 400

    City and County      Nashville, TN

    State and Zip Code    TN, 37027

    Telephone Number   888-221-7317

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**C.** **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

Name _Brookdale High Point North_
_Assisted Living & Memory Care_
Street Address _1568 Skeet Club Road_
City and County _High Point, Davidson/Gailford_
State and Zip Code _NC 27265_
Telephone Number _336-869-0026_

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

### III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [x] Failure to hire me.
- [ ] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [ ] Retaliation.
- [ ] Other acts *(specify)*: _____

   *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

   *September 30, 2022*

C.    I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [ ] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [ ] national origin _____
- [x] age *(year of birth)* *1956* *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)* _____
   _____

E.    The facts of my case are as follows. Attach additional pages if needed.

_Attached_ 

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_First Contact before September 30, 2022_

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)* _____ .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     11/22/2023

Signature of Plaintiff     *Lynn Bnie Brooks*

Printed Name of Plaintiff     Lynn Bnie Brooks.

### B.     For Attorneys

Date of signing:     _____

Signature of Attorney     _____

Printed Name of Attorney     _____

Bar Number     _____

Name of Law Firm     _____

Street Address     _____

State and Zip Code     _____

Telephone Number     _____

E-mail Address     _____

Lynn B. Brooks, MS Ed.D. LPC-RN Candidate
2180 Satellite Blvd, Suite 400
Duluth, GA, 30097
Phone (404) 552-4284 Fax
Email wlynnihrpeedee@yahoo.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| PLAINTIFF'S NAME, | Case No.: _____ |
|       Lynn Buie Brooks, | |
| vs. | LYNN BUIE BROOKS V BROOKDALE SENIOR LIVING |
| BOOKDALE SENIOR LIVING INC./BROOKDALE CORPORATION, | |
|       Defendant | |

Whereas Plaintiff, Lynn Buie Brooks has been offered a letter of "right to sue" from the Equal Employment Opportunity Commission (EEOC,) as a result of their investigation of the Defendant Brookdale Assisted Living/Brookdale Corporation, the Plaintiff hereby exercises that right. The results of the EEOC's investigation are unsubstantiated for the following reasons:

1. Firstly, the EEOC clearly stated that the case was eligible for mediation (Appendage A) However, one of the investigators on the case, Ingrid Waden-Wynn, implied that the decision to mediate was a closed discussion and it could take 2-3 years to further investigate if it was eligible for mediation (Appendage B). The differing decision of eligibility for mediation was a complete contradiction of what was submitted originally to Plaintiff by another EEOC evaluator in writing.

1

2. Secondly, the second investigator/evaluator Ingrid Waden-Wynn stated in her summary of findings, that there was no evidence to support Plaintiff's claim that she was dependent on the *alleged* RN, BSN Brookdale supervisor to renew her state registration. Plaintiff disputes this finding by the EEOC investigator as erroneous and lacking due diligence in her investigation (Appendage C.) The state of North Carolina without question requires the supervising employer's BSN to verify 8 hours of employment online. Plaintiff was employed with Brookdale three weeks, which was more than ample time to go online and verify 8 hours of employment, which all that was required. Plaintiff was told by the North Carolina Department of Health and Human Services division that oversees Certified Nursing Assistant state registry in two or more phone calls, that written notices or renewals were **no longer accepted by mail**. Plaintiff has included a screen shot of an online renewal form portal; no other form is accepted based on two conversations with the NCDHHS regarding renewals in Appendage C. The second page *not shown* in the screen shot requires a *BSN* to complete online registration renewals without CNA being present, *after hitting the submit button.* A copy of previous training requirements for CNA I Registry was printed in Plaintiff's last training manual which appears to be an outdated policy based on Plaintiff's two phone calls with the NCDHHS, also in Appendage C. The Plaintiff also submits to the court, a copy of former state CNA renewal at her last renewal with Novant Health in Appendage

2

D. This form is no longer available to a CNA to use, Plaintiff was told in two conversations with the state of North Carolina.

3. Investigator Ingrid Waden-Wynn's "Factual Background" () section in her investigation report was in fact, not factual when she stated that the services were that of a caregiver. The fact of the matter was that Brookdale's scope of services encompasses far more than caregiving, based on the three weeks that Plaintiff observed their services. Waden-Wynn's report itself states that "*trained caregivers help manage medications, bathing, dressing, and more,*" **and this is absolutely true, if and only if, caregivers are on the state registry to perform these skills, when personnel are not family members**. A person cannot "pass meds" without being listed on the state registry, either as a licensed professional or under the Certified Nursing Assistant state registration. Any other situation is not a caregiver situation, but in fact should be a licensed and/or Board Examined professional. Bathing, ambulating, dressing, and dispersing medication, all fall under CNA skills and any other individual administering any of these services by a person who is not a family member and who is not on the state registry, constitutes illegal employment.

4. Investigator Ingrid Waden-Wynn's findings did not demonstrate that she understands the concept of an agency or clinical facility having a *master license.* Plaintiff offered possible solutions to the lapse in credentials, to Brookdale in her *no-fault statement* by text or email and attempted to

3

mediate continued employment after losing state registration (Appendage C.)

5.  Investigator Ingrid Waden-Wynn's findings did not contain any evidence-based information to support her claim that no discrimination took place. She only gave a summary of Brookdale's policies and supplied a copy of their written statements of policies. However, having a policy and adhering to those statements are two different matters. Proof of discrimination under Title VII of the Civil Rights Act of 1964 was not addressed in her statement or how Waden-Wynn found that it was not violated.

6.  Finally, Ingrid Waden-Wynn's investigation stated in her written report that Plaintiff was added to the schedule for a type of "care giver" training in lieu of working as a registered legal nursing assistant/medication aide employee. This statement implies that the Brookdale Senior Living ignored Plaintiff's state CNA/Medication Aide registration and offered to train her in a lesser position to entice Plaintiff formerly a state registered clinical professional at the point of hire, into illegal employment. If that training included any skills, tasks, or duties that North Carolina DHHS requires under their state nursing regulations, it would be deemed illegal employment. Plaintiff refused to come on the property of Brookdale to perform tasks, skills, or duties that she was no longer eligible to perform legally and hired to carryout. This is the reason that Plaintiff refused to

4

enter the grounds of Brookdale Senior Living. She was no longer

qualified to do the work in which she was originally hired for.

### Plaintiff's Complaint and Background Information

*History of Clinical Experience and Training/ CNA I Registry Renewal*

Plaintiff completed a Certified Nursing Assistant I, Continuing Education course at

Forsyth Technical Community College on April 19, 2018. The course was offered through a

Workforce Development program and Plaintiff completed the course with a grade of S

(Satisfactory) for 177 contact hours. This was a North Carolina state approved course under

nursing. Plaintiff took the course for two reasons, one of which was to add a clinical certificate

rating with another credential for a new license as a Licensed Associate Professional Counselor

in the state of Georgia, and because it was required for enter a nursing program.

Plaintiff's first CNA I renewal was due in October 2020. Plaintiff received *a letter*

*6 months prior to expiration date* of her registration from the state of North Carolina, with a form

to be completed by a supervising BSN. The Plaintiff applied for and obtained employment at

Presbyterian Novant Hospital in the Immediate Care Unit as a CNA I for the purpose of keeping

her registration from lapsing and for her first clinical experience in nursing. Plaintiff worked

COVID-19 hall as well, as a demographic class member of the highest risk group for COVID-19

as a 64-year-old CNA in 2020. *This was prior to the availability of vaccines. Let the record*

***show, that up to this point the Plaintiff has never had the COVID-19 virus despite working in***

***an infectious disease unit for 1 day a week for three months. This was before vaccines were***

***available, and Plaintiff is classified as an "older worker*.**" Obtaining this position kept the CAN

I registration updated and satisfied prerequisites for some RN programs.

5

Plaintiff requested from her Novant employer's BSN supervisor at the end of her 12-hour shift, on the first day of her employment to fill out the state renewal form. The BSN invited Plaintiff into her workspace and filled out the form then gave it to Plaintiff. Plaintiff mailed the form to the state of North Carolina and her registration was successfully renewed for another 2-year period. With this last renewal period (2022), no letter was issued from the state. Plaintiff did call the state of North Carolina CNA registry board and was told, that the state of North Carolina had changed its procedures and *no longer mailed notifications*. Furthermore, they have a portal for a supervising BSN to logon to renew registrations for an employee ().

Prior to studying nursing, Plaintiff completed a *Master of Science Degree in Human Resources Business & Industry* from a regionally accredited academic institution in December of 1998 at age 42. The master's degree was primarily a counselor based academic program. It satisfied the requirements for a state license in North Carolina as a Licensed Professional Counselor Associate. It was a 60-hour graduate program with a NCE (National Counselor Exam) board (NBCC) examination at the end of the program. The qualifying degree with licensure allowed for medical billing privileges under the Department of Health and Human Services on the federal level, after two years of supervised work. *Plaintiff has never had the opportunity to complete that work* in the state of North Carolina. At the time, Plaintiff did not realize the *significance* of this 60-hour graduate degree with a board exam, until she saw a few jobs listed for a *Licensed Professional Counselor* in both Georgia and North Carolina. Plaintiff applied for and received a counselor license in the state of North Carolina, which was issued on June 11, 2010. Plaintiff was then age 54. Plaintiff was a skilled counselor, with over 1,000 non-clinical assessments before she started graduate school. Plaintiff worked JTPA, now known as Workforce Development programs conducting eligibility determinations for federally funded

6

programs in a Community Based Organization (CBO) Western Carolina Community Action and at Blue Ridge Community College. Plaintiff knows how many assessments she conducted because she counted them. Plaintiff also acquired additional assessment skills with an insurance license acquired in 2007, with 2 six months temporary insurance licenses in 2006 in the state of Georgia. Plaintiff is still licensed and is under the federal bureaucracy of DHHS/CMS. *This started the process of conducting clinical assessments for insurance companies to determine underwriting eligibility and developed Plaintiff's interest in nursing.*

Plaintiff obtained one 90-day position as a supervised Licensed Professional Counselor Associate (LPCA) in North Carolina working with disadvantaged youth mental health. The position and company fizzled and the Plaintiff's LPCA license was lapsed June 6, 2011, because the state of North Carolina claimed they never received Plaintiff's renewal package complete with CE credits, even though Plaintiff took renewal package to USPS, *before* the expiration date. Additionally, Plaintiff couldn't find any work in either the state of Georgia or North Carolina after her counseling position terminated. As a former employment counselor, Plaintiff accessed that she needed to update her credentials for better job readiness, especially since her graduate program was completed in 1998. Plaintiff made the decision to add a *RN* license to combine with a LPC license eligibility. This would allow Plaintiff to work credentialed as LPC-RN. United States Department of Labor's O'NET gives salary ranges at around $81,000.00 annually, and these candidates are eligible for medical billing privileges for both the employer and LPC. The RN licenses greatly extends the scope of functioning for part-time work as an older worker, with a master's degree that is eligible for billing in clinical professions.

The trek to nursing school has not been a smooth effort for the Plaintiff. She found the academic process for STEM math and science courses were difficult for an older

7

learner who had never studied these subjects at the level required for nursing. Plaintiff found the blatant discrimination of aging candidates shocking, in both education and employment by some individuals. ***Let the record show that Plaintiff has completed all of the prerequisites for a Bachelor of Science in Nursing degree and/or an Associate in Degree Nursing*** (with the exception of being on the state CNA registry.) Plaintiff contends that some professionals, both academic and employers do not bother to justify their discriminatory actions anymore. The number of seniors in our American population are expected to double, since Plaintiff was first fully licensed as an insurance agent in 2007 and had access to this statistical information. One of Plaintiff's nursing-based humanities course stated that humans will be able to live up to age 128 at some point in the 21st century. America is not prepared for this coming population boom of older Americans by attitudes towards aging or financially. Older Americans are aging differently than their parents or grandparents in the 21st century.

### Charge of Discrimination

*Statement of Discrimination Charge*

The Plaintiff alleges that she was and still is, a victim of discriminatory practices by Brookdale Senior Living and its affiliate Brookdale Corporation, by their refusal to follow the state of North Carolina guidelines to report 8 hours of employment on the North Carolina state portal while she was employed with the company. Furthermore, the Plaintiff asked repeatedly for the company to report her employment on the online portal. This failure to report Plaintiff's employment through the state portal lapsed her state registration and Plaintiff is not able to work as a CNA I or as a Medication Aide Tech. This was act of discrimination based on age and race, which has victimized the Plaintiff. Brookdale's actions victimized the Plaintiff **by** keeping her off the North Carolina state certified nursing assistant registry, **by** limiting her eligibility to apply

8

for some RN nursing programs, and **by** limiting the scope of working as a skilled clinical technician in the profession that she was training and educated in. Theses actions have cost the Plaintiff an undue hardship financially.

Plaintiff also alleges that the Equal Employment Opportunity Commission, aka the EEOC, was negligible and inconsistent when investing her claim and did not exercise due diligence. The EEOC first recognized Plaintiff's claim and then appeared to backoff off from their decision that Plaintiff is eligible for mediation. The written findings statement submitted by one of the EEOC investigators implied that Plaintiff was the cause of lapsing her own registration and refused to provide the written results of any Human Resources professional and provided ambiguous and half-truths statements in her summary. Therefore, most of the conclusions of the EEOC were either untrue or erroneous. Plaintiff maintains that she cannot renew her own registration with the state of North Carolina herself, only the BSN supervisor of the employer can report a renewal of registration in the state of North Carolina where the Plaintiff was employed. EEOC also claimed that Plaintiff had no rights to know the results of their discussions with Brookdale (*if such discussions ever took place*) about circumstances around her employment. Finally, the EEOC claimed that they did not see evidence of racial or age discrimination in an email to the Plaintiff (). EEOC provided no evidence disputing or contradicting Plaintiff's complaint that Brookdale was obligated and required to contact the state to report the 8 hours of employment.

### Age and Race in Discrimination

During the early days of the EEOC complaint, the first investigator Aaron Hyde clearly stated that Plaintiff had a case, and Plaintiff received notification that she was eligible for mediation. Also, a third EEOC investigator XX stated that while age and race was not clear to

9

him, this investigator did issue a "right to sue letter." There were three EEOC representatives that contacted Plaintiff by email or phone call, within a six-month duration of the claim.

As time passed Plaintiff noticed that Aaron Hyde's commitment to her claim eroded. Hyde notified Plaintiff that claim had been moved to another EEOC investigator Ingrid Waden-Wynn. **Plaintiff's claim is still that race and age played a big part in Brookdale's staff failure to comply with North Carolina state law, and to notify the state of an employee's 8 hours of work online at registry portal**.

*Age Is a Factor*

The Age Discrimination Act in 1967 was amended in 1978 to provide protection for individuals who are at least 40 years old and under age 70. The Brookdale HR professional who offered employment to Plaintiff did not tell Plaintiff or imply that she was too old to be a CNA at age 66. However, Plaintiff saw a different attitude from older staff members, including the BSN, RN who supervised CNAs. *Individuals view, assess, and interpret performance differently, based on their education, age, culture, and visual perceptions*. Most individuals in supervision know not to tell a worker that they think a job is not right for them because of their age. However, courts cannot ignore statistical measure as was presented in the *Brown v. Board of Education* case. The case introduced using a standard of measure to prove discrimination. The average age of a CNA is 41 and the median age is 36 (Zippia), 30 years or more younger than the Plaintiff. For an employer to overtly ignore the needs of an employee and the average age is 36 years or younger in the position, age is an implied statistical factor that cannot be ruled out. The risks are significantly higher for older workers in jobs that require physical exertion. However, the Age Discrimination Act says that older workers have federal protection under the law, if they can perform the tasks, duties, and responsibilities of the position. In conclusion, if the average or

10

median age of a CNA in the facility where the Plaintiff was employed is 36 or under, demonstrates that age was a factor for not reporting employment. Brookdale's supervision did not have to go through the evaluative process of job performance; they just allowed the registration to lapse and offered training for a lower skilled position.

### Racial Discrimination/ Griggs v. Duke Power 1971, Brown v. Board 1956

Racial discrimination as defined by the Civil Rights Act of 1964 and amended in 1967 can be proven by using several methods of burden of proofs. Plaintiff's case offers one or more of burden of proof in her complaint. Notice in appendage () the written statement given by the EEOC evaluator Ingrid Waden-Wynn used a term to identify her gender as "she/her." Plaintiff does not see the need for identifying her gender, but is identifying herself by race as (Native American/Indian, indigenous,) and a woman of color in the same manor of clarification. Discrimination manifests itself in many ways, not just by name calling but can also happen with *disparate treatment* and with *defacto segregation* as illustrated in the Griggs v. Duke Power case of 1971 and Brown v. Board of Education 1956.

In the Griggs case the defendant Duke Power, had two separate racial work groups up until the Civil Rights Act of 1964. Duke Power then changed the terms of condition requiring disparate qualifications for minorities than white workers hired for the same job. While the Griggs case point was that a higher education was not needed for the skills of the job, there was adverse impact on black applicants because a high school diploma was not relevant to the required job skills. Requiring high school diplomas affected black/African American applicants because they were less likely to have high school diplomas based on factors brought to light with segregation discrimination in education proven in Brown v. Board. However, the Griggs case did involve work groups divided by race and systemic hiring processes to keep old discriminatory

11

practices intact. This hiring practice had a disparate treatment and discriminatory outcome against a protected group class of individuals established in the Civil Rights Act of 1964. In the Plaintiff's case Brookdale has a similar operation as Duke Power did during the Griggs era. Most of Brookdale's workforce at the facility where Plaintiff was working was highly segregated. Black/African American were employed in lower skilled and uncredentialed positions (such as care givers, and dietary kitchen duties,) while majority of the Caucasian workers at the Brookdale Senior Living facility had higher skilled positions (qualified or not) and may have had different supervision. Based on EEOC's investigation, they probably were less qualified to do their jobs, by not being on the state's Medication Aide registry. Recall that the EEOC investigation stated medication management was part of the "care giver's" scope of function at the facility. *Plaintiff alleges that Brookdale hired her for two positions, lapsed her credentials, and invited her to work in a lower position by the EEOC's investigator's own report, keeping an old system of discriminatory practices in force*. In Plaintiff's case, Plaintiff held the higher credentials, both by board registry and education. However, the employer allowed Plaintiff's credentials to lapse to force a well-qualified technician to work in a lower job capacity, *care giver*. This action by itself constitutes discrimination because she is a protected class member as an American Indian/Alaskan Native. Plaintiff maintains that in the 21st century the workforce has defaulted back to *defacto segregation*. The workforce especially at Brookdale Senior Living, is dividing into segregated groups just as in Griggs v. Duke Power, and Plaintiff is being forced to segregate with a less skilled and less educated staff, primarily black/African Americans. *It is clear that Plaintiff is being forced to segregate as a Native American woman of color, into black/African American separate and unequal treatment as argued in both the Griggs case and the Brown v. Board case, instead of being accepted as Native American and addressing*

12

*the needs as a trained and board examined clinical technician*. Recall that American Indians/Alaskan Natives (Native Americans) have additional inalienable rights over and above other demographic populations under some federal rules and regulations. This is true especially under federal branches of government such as DHHS and CMS.

With the new buzz words in media regarding work teams the term "all black" is used more frequently. The purpose is to demonstrate pride of black/African American workers. However, the results of "all black" work reinforces old statistics argued in the Brown v. Board case, that segregation whether forced or *defacto* (self-imposed or by choice) results in lower performance than other groups by statistical measure due to discrimination, lack of opportunity to train and upgrade skills, and sometimes cultural perspective. The fact of the matter is, the Civil Rights Act 1964 has not been reversed. The argument of *defacto segregation* is still illegal under the law and "all black" work teams constitute illegal employment and a form of forced segregation.

Plaintiff was transferred from a Caucasian EEOC evaluator to a black/African American evaluator who had a different *cultural perspective* (a new buzz word.) Plaintiff's *cultural perspective* is not the same as Waden-Wynn's (investigator/evaluator) or the BSN/RN at Brookdale (also a black/African American) who refused to report Plaintiff's employment to the state based on her *cultural perspective* of who Plaintiff is, racially and/or culturally. Caucasian female employees during the three-week period of Plaintiff's observation at the Brookdale facility had other jobs which required a higher skilled level. Those jobs included medication aide techs, social workers, and operational managers among other professionals. More than 90% of the CNAs or individuals who may be classified as *care givers* staff at Brookdale Senior Living were black/African Americans. The argument in Brown v. Board of Education and Griggs v.

13

Duke Power statistically proved that segregation, whether forced or *defacto*, led to poorer economic and educational opportunities for minorities and the treatment is *disparate*. ***Plaintiff maintains that she was forced to segregate with black/African American workers who were viewed as care givers and did not need to be on the state registry to perform skilled technical clinical skills as mandated by the state of North Carolina.***

The BSN/RN onsite at Brookdale Senior Living may have supervised Med Techs (medication aides) at that site or may have been a Med Tech herself at some point and may herself been an RN under a Master Contract, and not have an earned BSN credential yet. Plaintiff did not observe Med Techs at any of the staff meetings conducted by the BSN, RN. Most of the Med Techs were Caucasians *or other*. This supervising BSN did not offer any invitation to ask Plaintiff if she had questions, or how orientation was progressing. She conducted meetings with staff but was aloof to her subordinates as her style of manager. Brookdale's BSN, RN did not make any effort to address Plaintiff personally regarding Plaintiff's employment, by using name, asking questions to determine how or if Plaintiff was adjusting to facility and was distant in her approach to supervision.

In comparison, Plaintiff had a different experience with the BSN supervisor at Presbyterian Novant Hospital with her registration renewal. This BSN (believed to be Native American or Caucasian) frequently asked Plaintiff throughout the day how things were going. She was attentive to Plaintiff's needs and did not hesitate to fill out the form (required at that time) to verify Plaintiff's employment. This was Novant's BSN's *cultural perspective* of what professional BSN supervision means. Again, Plaintiff is not implying that the Brookdale BSN was less effective obtaining her position objectives, or not a good supervisor but administering her supervision based on her cultural perspective or bias. What also the Plaintiff is saying, is that

14

Novant's BSN provided a different *cultural perspective* towards her position and the Plaintiff did not experience *adverse impact* with her Novant Health renewal. Plaintiff had a different outcome with renewing her registration for the state registry. This is the concept of the Brown v. Board decision, that having a diverse group of people, (in this case in education) working situation, reduces the chances of disparate outcomes between racially different groups.

Plaintiff recognizes the following sequence of events:

- ***Plaintiff's Charge of file-*** Plaintiff signed onto EEOC website on or around September 28, 2022, to ask for federal or job protection when she discovered that her employer, Brookdale Senior Living was not responding to her request that 8 hours of work had been performed and was eligible to continue her registration on the North Carolina State Registry for CNA I and Medication Aide certifications. EEOC then notified Plaintiff that it could take up to 90 days to respond to complaint.

- ***Plaintiff's Attempt at No-Fault Settlement-*** Plaintiff's certifications and state registrations for CNA I and Medication Aide expired at midnight September 30, 2022. Plaintiff then contacted two Brookdale Senior Living employees (BSN, RN and an Operations Manager) regarding other employment opportunities under a "Master Nursing License" (if facility held such licenses.) Or, as a possible Licensed Professional Counselor (Associate) for performing similar or same skills that as an added benefit for them could offer Medicare and/or employer billing to insurance companies.

15

- ***Investigation by the EEOC***- EEOC started with investigator Aaron Hyde who attempted to extract a statement from Plaintiff of a charge under 1,000 words. We communicated by phone and email for a few weeks. A brief statement was finally agreed upon. Plaintiff noticed a difference in Hyde's attitude toward her claim as the months dragged on. Hyde then stated that Plaintiff had been transferred to Waden-Wynn, who did place a phone call to Plaintiff. Investigator Ingrid Waden-Wynn's attitude was one of doubt of Plaintiff's credibility and as you read her statement, it shows bias on the side of the employer, Brookdale Senior Living. After not hearing from the EEOC, Plaintiff did contact a North Carolina US Senator's Office to check on the status of the case. Eventually Plaintiff did receive another investigator's Alexander Perez contact via email.

- ***Plaintiff's Attempt at Conciliation***- Plaintiff has continued to offer resolution with the Brookdale Senior Living staff (Operation's Manager) for mediation, which request included supporting a higher license as a clinical counselor issued from the state of Georgia (with reciprocity for border state North Carolina), where similar functions would be carried out in the capacity of which the Plaintiff was originally hired for. Plaintiff suggested that the Operation's Manager contact their corporate office and submit a *job requisition*, to authorize a new license and position as mediation for Plaintiff's lapsed certifications. The Operations Manager referred it to another person who may or may not have been a Brookdale corporation personnel employee, who stated that they don't hire

16

counselors and Plaintiff could apply for any positions online. However, Plaintiff indicated that they do need to sign an employment contract for licensure. Working as a returning Team Member for few weeks, Plaintiff had no protection of continuing employment without a written agreement, and no guarantee that she would only work a few weeks and her billing eligibility continuing to be used by employer.

- ***EEOC's Recommendation for Litigation (Right to Sue Letter Issued)-*** Thanks to the Senator's Office, I did receive a response accompanied with a poor evaluative investigation by the EEOC investigator Ingrid Waden-Wynn, however, another EEOC investigator Alex Perez, did issue the right to sue letter from Perez.

17

**Effects and Consequences of Defendant's Discriminatory Actions**

Plaintiff has been a victim of dire consequences, as a result of Brookdale Senior Living's intentional negligence to renew Plaintiff's CNA and Medication Aide registrations. Plaintiff has suffered the following but not limited to, cascade of continuing repercussions:

- *Loss of income/financial hardship*- The lapsing of Plaintiff's two clinical registrations has caused an undue hardship in her finances. Plaintiff has spent well over $40,000 in education and training for nursing credentials. For some nursing programs, the Certified Nursing Assist is a requirement at application and/or at the point of entrance into a program. Additionally, extra points for nursing school admittance are given for other clinical certificates such as Plaintiff's Medication Aide certificate, which was also lapsed along with the CNA registration. Plaintiff is *still not on state registry*, after a year of trying to reinstate CNA credentials and financial expenditures. Plaintiff cannot reinstate Medication Aide registration *unless* she is on the state of North Carolina's state registry for CNA. Plaintiff has spent at least $2,000 or more to retake coursework and testing, not including the Medication Aide certificate. The results of those attempts are discussed more under in another section of this list. Plaintiff has lost the opportunity to practice and build her skills by the loss of working in a clinical position. Having real time experience in assistant living, assists with preparation for nursing school, when accepted. Plaintiff has lost part-

18

time or full-time capability income (*estimated at $21,216 annually part-time*) and other corporate worker benefits.

- ***Loss of two clinical credentials***- The loss of two certificates means a loss in the scope of function working as an unlicensed or non-registered clinical specialist. This forces Plaintiff to work with unskilled labor, as an Education Doctor (EdD.) This can create animosity in a work environment by having someone overqualified and working at a lower level of employment such as care giving.

- ***Limits eligibility for acceptance to a nursing program***- Not being on the North Carolina state registry for CNA will omit eligibility for most, if not all community college Associate Degree Nursing (ADN) programs. However, Plaintiff has been readmitted to her former bachelor's degree conferring university with an opportunity for nursing without being on the state's registry. The university catalog does not specify that being on the North Carolina state registry for CNA is necessary currently. Also, all of Plaintiff's earned community college pre-nursing academic prerequisites credits, have been accepted by the university. Plaintiff has *not* been accepted into the university's Bachelor of Science in Nursing program at this time but hopes to be at some point.

- ***Setback at goal of obtaining RN licenses as a 66-year-old Candidate***- Reduces chances that Plaintiff will ever reach the goal of qualifying for a RN license based on age and finances alone. Plaintiff is now 67 as of this court filing. Her chances of injury and/or illness increases with age.

19

Plaintiff's chances or license, decrease with age. Plaintiff's nursing Candidacy has been set back at least 12 months and has still not been able to reinstate or re-establish her registration on the North Carolina state registry.

- *Loss of clinical credibility*- Plaintiff maintains that losing her clinical certificates jeopardizes her clinical training and the ability to be employed and/or recognized as a clinical professional. Candidate is finding the door closing at almost every opportunity for working and re-establishing registry credentials.

- *Systemic blacklisting in origin*- It is the opinion of the Plaintiff, as a master's level trained and experienced counselor and former human resources professional that a *pattern of behavior* is being established; whereby the Plaintiff is consistently excluded from employment, job opportunities, licenses and certifications, without being connected to direct performance standards that are measurable and not disparate from other employees or candidates violating rules and regulation of labor, meeting the legal term of blacklisting.

- *Harsh repercussions*- Finally, Plaintiff has had harsh repercussions with her lapsed credential. Plaintiff no longer has the option to work as a medical technician part-time or full time under nursing credentialing. This means Plaintiff would have to work at a lower wage if she could find employment. Plaintiff could possibly work under a higher license as a clinician with similar functions as her lapsed certificates if an employer

20

supports licensing. However, no employer has agreed to support counselor license, despite billing capabilities of the license. Plaintiff is suspicious that corporations are billing insurance companies, state governments, and CMS services with counselor credentials, and is the reason for the reluctance to train or employ individuals with counselor credentials or licenses. Plaintiff has made two attempts to replace CNA certificates with training at considerable costs but is still has been unable to reinstate credentials on state registry.

### Summary

Plaintiff alleges that she was hired at Brookdale Senior Living on September 16, 2022, as a CNA I/Med Tech (). Plaintiff completed all of Brookdale's online and observation orientation tasks and duties for three weeks. Plaintiff at the interview and point of hire relayed to the HR professional who made job offer, that her registration would lapse on September 30, 2022. HR representative advised Plaintiff to relay this information to the RN and proceeded to give me her contact number. No mention of care giving ever came up; Plaintiff is submitting copies of new hire paperwork as proof of condition of employment. Plaintiff spoke to BSN, RN on at least three occasions expressing urgency to address the issue. This BSN supervisor never directly responded to Plaintiff's request. Plaintiff work credentials lapsed on September 30, 2022.

Plaintiff then filled out an EEOC complaint and the first evaluator Aaron Hyde (believed to be Caucasian) interviewed Plaintiff and found reason to accept the charge. However, EEOC reconsidered after months of delaying the case and transferred Plaintiff to a black/African American investigator Ingrid Walden-Wynn who had a different *cultural perspective* of the case.

21

And just as the Brown v. Board of Education case proved in court, Plaintiff received an inferior treatment with EEOC by changing evaluators forcing Plaintiff to segregate with a black/African American, who was unable or refused to investigate the facts. Plaintiff is not eluding that the EEOC investigator is inferior, but her perspective on how to investigate and her point of view was skewed against Plaintiff as identifying as an American Indian/Native American, causing Walden-Wynn to overlook or ignore the facts surrounding Plaintiff's complaint. In this matter, Waden-Wynn as investigator, failed to exercise due diligence by just not reporting accurately and not fact checking with of North Carolina requirements and process for renewing Plaintiff's credentials. ***The state of North Carolina has a portal to renew a CNA registration and does require that it be done online, and the employer's BSN must be the one to fill out the form.*** The third EEOC investigator, Alexander Perez (believed to be Hispanic) found liability and issued a right to sue letter, although he hinted that he wasn't sure about the discrimination.

As a result of the EEOC's botched investigation and Brookdale's negligence to adhere to the state of North Carolina's requirements for CNAs, Plaintiff has suffered consequences. Those consequences include, loss of income, expenditures for re-certification including transportation, tuition, fees, training uniforms, state testing and retesting costs over the last year, lack of clinical employment, and possible setback for nursing program eligibility increasing the risk that the Plaintiff will not be able to obtain a RN license due to aging.

Plaintiff is seeking punitive damages to include lost wages and future wages if Plaintiff cannot regain clinical licenses and/or registration. Also, to include at least one year of estimated full-time wages of a fully credentialed clinical professional as a LPC-RN at $81,000 because Plaintiff is at least one year behind in nursing study due to lapsed credentials and trying to replace them. Additionally, reimbursement for training costs and testing for CNA I courses,

22

and future Medication Aide training and testing fees, and reimbursement for Licensed Associate Professional Counselor fees in the state of Georgia, since Plaintiff is no longer eligible to work as a CNA/Med Tech under the state of North Carolina Board of Nursing, and attorney's fees if one is appointed or hired by Plaintiff.

Plaintiff is also willing to allow for trial by jury if court and or future attorney advise or order.

## Recognition of Georgia Northern District Court Jurisdiction

Plaintiff requests from court to recognize the Georgia Northern District Court as Jurisdiction for this hearing for the following reasons:

- Neutral locality- In the Northern District of Georgia US District Court in Gainesville, court's location offers neutral locality for a single-issue dispute/argument among parties located in three different state court districts. The legitimacy of the argument itself, has been disputed by bureaucracy, but the bureaucrats admit probable grounds for litigation exists, among their own ranks. Two of the three parties involved are border states of Georgia and parties involved are located in eastern Tennessee, North Carolina, and Georgia (Georgia has jurisdiction over all of Plaintiff's current licenses and clinical license eligibility.) The parties include, Brookdale Senior Living located in High Point, North Carolina, Equal Employment Opportunity Commission located in Greensboro, North Carolina and possibly elsewhere, and Brookdale Corporation located in X, Tennessee.

- A fourth independent party and another reason for Northern Georgia District Court jurisdiction as neutral ground, is because a United States Senator's Office was asked to intervene on Plaintiff's behalf in a neutral position. Plaintiff feels Senator needs to keep

23

his credibility as an arch conservative on what is usually viewed as a liberal arena with discrimination cases. The Senator is required to serve *all* constituents regardless of party preference. Plaintiff requested help from a US Senator as a constituent, to move her case forward when EEOC bureaucracy stalled. Plaintiff does not want to see the Senator blacklisted by his own party because his office investigated to see why a race-based case wasn't moving forward. Recall that one Congressman recently lost his senior conservative position as House Speaker, because he was accused of supporting a liberal agenda.

- General safety of Plaintiff and of all parties are important. Moving the case from close proximity of the former Brookdale Senior Living worksite, helps keep emotions or anger down. Plaintiff asserts that her case has overwhelmingly controversial based on different political, cultural, and clinical views of who she is, any advantages that groups perceive that Plaintiff may or may not have received, and that older workers should not enter the clinical or medical profession. Any race-based case can trigger escalated emotions. Unfortunately, people are not interested in age discrimination as much, or how this demographic population is being treated in the employment, training, and education.

### Pacer Public Access to Court Electronic Records

Plaintiff is requesting permission to have her US Courts Pacer Public Access account enabled for uploading, and responding to or creating any motions, unless an attorning has been appointed or is retained.

24

1

2

3

4

5          Dated this day of October 11, 2023.

6

7                                                    _____
                                                    Attorney Name
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

Lynn B. Brooks, MS Ed.D. LPC-RN Candidate
2180 Satellite Blvd, Suite 400
Duluth, GA, 30097
Phone (404) 552-4284 Fax
Email wlynnihrpeedee@yahoo.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

| PLAINTIFF'S NAME, | Case No.: _____ |
|---|---|
| Lynn Buie Brooks, | |
| vs. | LYNN BUIE BROOKS V BROOKDALE SENIOR LIVING |
| BOOKDALE SENIOR LIVING INC./BROOKDALE CORPORATION, | |
| Defendant | |

Whereas Plaintiff, Lynn Buie Brooks has been offered a letter of "right to sue" from the Equal Employment Opportunity Commission (EEOC,) as a result of their investigation of the Defendant Brookdale Assisted Living/Brookdale Corporation, the Plaintiff hereby exercises that right. The results of the EEOC's investigation are unsubstantiated for the following reasons:

1. Firstly, the EEOC clearly stated that the case was eligible for mediation (Appendage A) However, one of the investigators on the case, Ingrid Waden-Wynn, implied that the decision to mediate was a closed discussion and it could take 2-3 years to further investigate if it was eligible for mediation (Appendage B). The differing decision of eligibility for mediation was a complete contradiction of what was submitted originally to Plaintiff by another EEOC evaluator in writing.

1

2. Secondly, the second investigator/evaluator Ingrid Waden-Wynn stated in her summary of findings, that there was no evidence to support Plaintiff's claim that she was dependent on the *alleged* RN, BSN Brookdale supervisor to renew her state registration. Plaintiff disputes this finding by the EEOC investigator as erroneous and lacking due diligence in her investigation (Appendage C.) The state of North Carolina without question requires the supervising employer's BSN to verify 8 hours of employment online. Plaintiff was employed with Brookdale three weeks, which was more than ample time to go online and verify 8 hours of employment, which all that was required. Plaintiff was told by the North Carolina Department of Health and Human Services division that oversees Certified Nursing Assistant state registry in two or more phone calls, that written notices or renewals were *no longer accepted by mail*. Plaintiff has included a screen shot of an online renewal form portal; no other form is accepted based on two conversations with the NCDHHS regarding renewals in Appendage C. The second page *not shown* in the screen shot requires a *BSN* to complete online registration renewals without CNA being present, *after hitting the submit button*. A copy of previous training requirements for CNA I Registry was printed in Plaintiff's last training manual which appears to be an outdated policy based on Plaintiff's two phone calls with the NCDHHS, also in Appendage C. The Plaintiff also submits to the court, a copy of former state CNA renewal at her last renewal with Novant Health in Appendage

2

D. This form is no longer available to a CNA to use, Plaintiff was told in two conversations with the state of North Carolina.

3. Investigator Ingrid Waden-Wynn's "Factual Background" () section in her investigation report was in fact, not factual when she stated that the services were that of a caregiver. The fact of the matter was that Brookdale's scope of services encompasses far more than caregiving, based on the three weeks that Plaintiff observed their services. Waden-Wynn's report itself states that *"trained caregivers help manage medications, bathing, dressing, and more,"* **and this is absolutely true, <u>if and only if, caregivers are on the state registry to perform these skills, when personnel are not family members</u>**. A person cannot "pass meds" without being listed on the state registry, either as a licensed professional or under the Certified Nursing Assistant state registration. Any other situation is not a caregiver situation, but in fact should be a licensed and/or Board Examined professional. Bathing, ambulating, dressing, and dispersing medication, all fall under CNA skills and any other individual administering any of these services by a person who is not a family member and who is not on the state registry, constitutes illegal employment.

4. Investigator Ingrid Waden-Wynn's findings did not demonstrate that she understands the concept of an agency or clinical facility having a *master license*. Plaintiff offered possible solutions to the lapse in credentials, to Brookdale in her *no-fault statement* by text or email and attempted to

3

mediate continued employment after losing state registration (Appendage C.)

5. Investigator Ingrid Waden-Wynn's findings did not contain any evidence-based information to support her claim that no discrimination took place. She only gave a summary of Brookdale's policies and supplied a copy of their written statements of policies. However, having a policy and adhering to those statements are two different matters. Proof of discrimination under Title VII of the Civil Rights Act of 1964 was not addressed in her statement or how Waden-Wynn found that it was not violated.

6. Finally, Ingrid Waden-Wynn's investigation stated in her written report that Plaintiff was added to the schedule for a type of "care giver" training in lieu of working as a registered legal nursing assistant/medication aide employee. This statement implies that the Brookdale Senior Living ignored Plaintiff's state CNA/Medication Aide registration and offered to train her in a lesser position to entice Plaintiff formerly a state registered clinical professional at the point of hire, into illegal employment. If that training included any skills, tasks, or duties that North Carolina DHHS requires under their state nursing regulations, it would be deemed illegal employment. Plaintiff refused to come on the property of Brookdale to perform tasks, skills, or duties that she was no longer eligible to perform legally and hired to carryout. This is the reason that Plaintiff refused to

4

enter the grounds of Brookdale Senior Living. She was no longer

qualified to do the work in which she was originally hired for.

### Plaintiff's Complaint and Background Information

*History of Clinical Experience and Training/ CNA I Registry Renewal*

Plaintiff completed a Certified Nursing Assistant I, Continuing Education course at

Forsyth Technical Community College on April 19, 2018. The course was offered through a

Workforce Development program and Plaintiff completed the course with a grade of S

(Satisfactory) for 177 contact hours. This was a North Carolina state approved course under

nursing. Plaintiff took the course for two reasons, one of which was to add a clinical certificate

rating with another credential for a new license as a Licensed Associate Professional Counselor

in the state of Georgia, and because it was required for enter a nursing program.

Plaintiff's first CNA I renewal was due in October 2020. Plaintiff received *a letter*

*6 months prior to expiration date* of her registration from the state of North Carolina, with a form

to be completed by a supervising BSN. The Plaintiff applied for and obtained employment at

Presbyterian Novant Hospital in the Immediate Care Unit as a CNA I for the purpose of keeping

her registration from lapsing and for her first clinical experience in nursing. Plaintiff worked

COVID-19 hall as well, as a demographic class member of the highest risk group for COVID-19

as a 64-year-old CNA in 2020. *This was prior to the availability of vaccines.* **Let the record**

**show, that up to this point the Plaintiff has never had the COVID-19 virus despite working in**

**an infectious disease unit for 1 day a week for three months. This was before vaccines were**

**available, and Plaintiff is classified as an "older worker."** Obtaining this position kept the CAN

I registration updated and satisfied prerequisites for some RN programs.

Plaintiff requested from her Novant employer's BSN supervisor at the end of her 12-hour shift, on the first day of her employment to fill out the state renewal form. The BSN invited Plaintiff into her workspace and filled out the form then gave it to Plaintiff. Plaintiff mailed the form to the state of North Carolina and her registration was successfully renewed for another 2-year period. With this last renewal period (2022), no letter was issued from the state. Plaintiff did call the state of North Carolina CNA registry board and was told, that the state of North Carolina had changed its procedures and *no longer mailed notifications*. Furthermore, they have a portal for a supervising BSN to logon to renew registrations for an employee ().

Prior to studying nursing, Plaintiff completed a *Master of Science Degree in Human Resources Business & Industry* from a regionally accredited academic institution in December of 1998 at age 42. The master's degree was primarily a counselor based academic program. It satisfied the requirements for a state license in North Carolina as a Licensed Professional Counselor Associate. It was a 60-hour graduate program with a NCE (National Counselor Exam) board (NBCC) examination at the end of the program. The qualifying degree with licensure allowed for medical billing privileges under the Department of Health and Human Services on the federal level, after two years of supervised work. *Plaintiff has never had the opportunity to complete that work* in the state of North Carolina. At the time, Plaintiff did not realize the *significance* of this 60-hour graduate degree with a board exam, until she saw a few jobs listed for a *Licensed Professional Counselor* in both Georgia and North Carolina. Plaintiff applied for and received a counselor license in the state of North Carolina, which was issued on June 11, 2010. Plaintiff was then age 54. Plaintiff was a skilled counselor, with over 1,000 non-clinical assessments before she started graduate school. Plaintiff worked JTPA, now known as Workforce Development programs conducting eligibility determinations for federally funded

6

programs in a Community Based Organization (CBO) Western Carolina Community Action and at Blue Ridge Community College. Plaintiff knows how many assessments she conducted because she counted them. Plaintiff also acquired additional assessment skills with an insurance license acquired in 2007, with 2 six months temporary insurance licenses in 2006 in the state of Georgia. Plaintiff is still licensed and is under the federal bureaucracy of DHHS/CMS. *This started the process of conducting clinical assessments for insurance companies to determine underwriting eligibility and developed Plaintiff's interest in nursing.*

        Plaintiff obtained one 90-day position as a supervised Licensed Professional Counselor Associate (LPCA) in North Carolina working with disadvantaged youth mental health. The position and company fizzled and the Plaintiff's LPCA license was lapsed June 6, 2011, because the state of North Carolina claimed they never received Plaintiff's renewal package complete with CE credits, even though Plaintiff took renewal package to USPS, *before* the expiration date. Additionally, Plaintiff couldn't find any work in either the state of Georgia or North Carolina after her counseling position terminated. As a former employment counselor, Plaintiff accessed that she needed to update her credentials for better job readiness, especially since her graduate program was completed in 1998. Plaintiff made the decision to add a *RN* license to combine with a LPC license eligibility. This would allow Plaintiff to work credentialed as LPC-RN. United States Department of Labor's O'NET gives salary ranges at around $81,000.00 annually, and these candidates are eligible for medical billing privileges for both the employer and LPC. The RN licenses greatly extends the scope of functioning for part-time work as an older worker, with a master's degree that is eligible for billing in clinical professions.

        The trek to nursing school has not been a smooth effort for the Plaintiff. She found the academic process for STEM math and science courses were difficult for an older

7

learner who had never studied these subjects at the level required for nursing. Plaintiff found the blatant discrimination of aging candidates shocking, in both education and employment by some individuals. ***Let the record show that Plaintiff has completed all of the prerequisites for a Bachelor of Science in Nursing degree and/or an Associate in Degree Nursing*** (with the exception of being on the state CNA registry.) Plaintiff contends that some professionals, both academic and employers do not bother to justify their discriminatory actions anymore. The number of seniors in our American population are expected to double, since Plaintiff was first fully licensed as an insurance agent in 2007 and had access to this statistical information. One of Plaintiff's nursing-based humanities course stated that humans will be able to live up to age 128 at some point in the 21st century. America is not prepared for this coming population boom of older Americans by attitudes towards aging or financially. Older Americans are aging differently than their parents or grandparents in the 21st century.

### Charge of Discrimination

*Statement of Discrimination Charge*

The Plaintiff alleges that she was and still is, a victim of discriminatory practices by Brookdale Senior Living and its affiliate Brookdale Corporation, by their refusal to follow the state of North Carolina guidelines to report 8 hours of employment on the North Carolina state portal while she was employed with the company. Furthermore, the Plaintiff asked repeatedly for the company to report her employment on the online portal. This failure to report Plaintiff's employment through the state portal lapsed her state registration and Plaintiff is not able to work as a CNA I or as a Medication Aide Tech. This was act of discrimination based on age and race, which has victimized the Plaintiff. Brookdale's actions victimized the Plaintiff **by** keeping her off the North Carolina state certified nursing assistant registry, **by** limiting her eligibility to apply

8

for some RN nursing programs, and **by** limiting the scope of working as a skilled clinical technician in the profession that she was training and educated in. Theses actions have cost the Plaintiff an undue hardship financially.

Plaintiff also alleges that the Equal Employment Opportunity Commission, aka the EEOC, was negligible and inconsistent when investing her claim and did not exercise due diligence. The EEOC first recognized Plaintiff's claim and then appeared to backoff off from their decision that Plaintiff is eligible for mediation. The written findings statement submitted by one of the EEOC investigators implied that Plaintiff was the cause of lapsing her own registration and refused to provide the written results of any Human Resources professional and provided ambiguous and half-truths statements in her summary. Therefore, most of the conclusions of the EEOC were either untrue or erroneous. Plaintiff maintains that she cannot renew her own registration with the state of North Carolina herself, only the BSN supervisor of the employer can report a renewal of registration in the state of North Carolina where the Plaintiff was employed. EEOC also claimed that Plaintiff had no rights to know the results of their discussions with Brookdale (*if such discussions ever took place*) about circumstances around her employment. Finally, the EEOC claimed that they did not see evidence of racial or age discrimination in an email to the Plaintiff (). EEOC provided no evidence disputing or contradicting Plaintiff's complaint that Brookdale was obligated and required to contact the state to report the 8 hours of employment.

### Age and Race in Discrimination

During the early days of the EEOC complaint, the first investigator Aaron Hyde clearly stated that Plaintiff had a case, and Plaintiff received notification that she was eligible for mediation. Also, a third EEOC investigator XX stated that while age and race was not clear to

9

him, this investigator did issue a "right to sue letter." There were three EEOC representatives that contacted Plaintiff by email or phone call, within a six-month duration of the claim.

As time passed Plaintiff noticed that Aaron Hyde's commitment to her claim eroded. Hyde notified Plaintiff that claim had been moved to another EEOC investigator Ingrid Waden-Wynn. **Plaintiff's claim is still that race and age played a big part in Brookdale's staff failure to comply with North Carolina state law, and to notify the state of an employee's 8 hours of work online at registry portal.**

*Age Is a Factor*

The Age Discrimination Act in 1967 was amended in 1978 to provide protection for individuals who are at least 40 years old and under age 70. The Brookdale HR professional who offered employment to Plaintiff did not tell Plaintiff or imply that she was too old to be a CNA at age 66. However, Plaintiff saw a different attitude from older staff members, including the BSN, RN who supervised CNAs. *Individuals view, assess, and interpret performance differently, based on their education, age, culture, and visual perceptions.* Most individuals in supervision know not to tell a worker that they think a job is not right for them because of their age. However, courts cannot ignore statistical measure as was presented in the *Brown v. Board of Education* case. The case introduced using a standard of measure to prove discrimination. The average age of a CNA is 41 and the median age is 36 (Zippia), 30 years or more younger than the Plaintiff. For an employer to overtly ignore the needs of an employee and the average age is 36 years or younger in the position, age is an implied statistical factor that cannot be ruled out. The risks are significantly higher for older workers in jobs that require physical exertion. However, the Age Discrimination Act says that older workers have federal protection under the law, if they can perform the tasks, duties, and responsibilities of the position. In conclusion, if the average or

10

median age of a CNA in the facility where the Plaintiff was employed is 36 or under, demonstrates that age was a factor for not reporting employment. Brookdale's supervision did not have to go through the evaluative process of job performance; they just allowed the registration to lapse and offered training for a lower skilled position.

### Racial Discrimination/ Griggs v. Duke Power 1971, Brown v. Board 1956

Racial discrimination as defined by the Civil Rights Act of 1964 and amended in 1967 can be proven by using several methods of burden of proofs. Plaintiff's case offers one or more of burden of proof in her complaint. Notice in appendage () the written statement given by the EEOC evaluator Ingrid Waden-Wynn used a term to identify her gender as "she/her." Plaintiff does not see the need for identifying her gender, but is identifying herself by race as (Native American/Indian, indigenous,) and a woman of color in the same manor of clarification. Discrimination manifests itself in many ways, not just by name calling but can also happen with *disparate treatment* and with *defacto segregation* as illustrated in the Griggs v. Duke Power case of 1971 and Brown v. Board of Education 1956.

In the Griggs case the defendant Duke Power, had two separate racial work groups up until the Civil Rights Act of 1964. Duke Power then changed the terms of condition requiring disparate qualifications for minorities than white workers hired for the same job. While the Griggs case point was that a higher education was not needed for the skills of the job, there was adverse impact on black applicants because a high school diploma was not relevant to the required job skills. Requiring high school diplomas affected black/African American applicants because they were less likely to have high school diplomas based on factors brought to light with segregation discrimination in education proven in Brown v. Board. However, the Griggs case did involve work groups divided by race and systemic hiring processes to keep old discriminatory

11

practices intact. This hiring practice had a disparate treatment and discriminatory outcome against a protected group class of individuals established in the Civil Rights Act of 1964. In the Plaintiff's case Brookdale has a similar operation as Duke Power did during the Griggs era. Most of Brookdale's workforce at the facility where Plaintiff was working was highly segregated. Black/African American were employed in lower skilled and uncredentialed positions (such as care givers, and dietary kitchen duties,) while majority of the Caucasian workers at the Brookdale Senior Living facility had higher skilled positions (qualified or not) and may have had different supervision. Based on EEOC's investigation, they probably were less qualified to do their jobs, by not being on the state's Medication Aide registry. Recall that the EEOC investigation stated medication management was part of the "care giver's" scope of function at the facility. ***Plaintiff alleges that Brookdale hired her for two positions, lapsed her credentials, and invited her to work in a lower position by the EEOC's investigator's own report, keeping an old system of discriminatory practices in force***. In Plaintiff's case, Plaintiff held the higher credentials, both by board registry and education. However, the employer allowed Plaintiff's credentials to lapse to force a well-qualified technician to work in a lower job capacity, *care giver*. This action by itself constitutes discrimination because she is a protected class member as an American Indian/Alaskan Native. Plaintiff maintains that in the 21st century the workforce has defaulted back to *defacto segregation*. The workforce especially at Brookdale Senior Living, is dividing into segregated groups just as in Griggs v. Duke Power, and Plaintiff is being forced to segregate with a less skilled and less educated staff, primarily black/African Americans. ***It is clear that Plaintiff is being forced to segregate as a Native American woman of color, into black/African American separate and unequal treatment as argued in both the Griggs case and the Brown v. Board case, instead of being accepted as Native American and addressing***

12

*the needs as a trained and board examined clinical technician.* Recall that American Indians/Alaskan Natives (Native Americans) have additional inalienable rights over and above other demographic populations under some federal rules and regulations. This is true especially under federal branches of government such as DHHS and CMS.

With the new buzz words in media regarding work teams the term "all black" is used more frequently. The purpose is to demonstrate pride of black/African American workers. However, the results of "all black" work reinforces old statistics argued in the Brown v. Board case, that segregation whether forced or *defacto* (self-imposed or by choice) results in lower performance than other groups by statistical measure due to discrimination, lack of opportunity to train and upgrade skills, and sometimes cultural perspective. The fact of the matter is, the Civil Rights Act 1964 has not been reversed. The argument of *defacto segregation* is still illegal under the law and "all black" work teams constitute illegal employment and a form of forced segregation.

Plaintiff was transferred from a Caucasian EEOC evaluator to a black/African American evaluator who had a different *cultural perspective* (a new buzz word.) Plaintiff's *cultural perspective* is not the same as Waden-Wynn's (investigator/evaluator) or the BSN/RN at Brookdale (also a black/African American) who refused to report Plaintiff's employment to the state based on her *cultural perspective* of who Plaintiff is, racially and/or culturally. Caucasian female employees during the three-week period of Plaintiff's observation at the Brookdale facility had other jobs which required a higher skilled level. Those jobs included medication aide techs, social workers, and operational managers among other professionals. More than 90% of the CNAs or individuals who may be classified as *care givers* staff at Brookdale Senior Living were black/African Americans. The argument in Brown v. Board of Education and Griggs v.

13

Duke Power statistically proved that segregation, whether forced or *defacto,* led to poorer economic and educational opportunities for minorities and the treatment is *disparate.* **Plaintiff maintains that she was forced to segregate with black/African American workers who were viewed as care givers and did not need to be on the state registry to perform skilled technical clinical skills as mandated by the state of North Carolina.**

The BSN/RN onsite at Brookdale Senior Living may have supervised Med Techs (medication aides) at that site or may have been a Med Tech herself at some point and may herself been an RN under a Master Contract, and not have an earned BSN credential yet. Plaintiff did not observe Med Techs at any of the staff meetings conducted by the BSN, RN. Most of the Med Techs were Caucasians *or other*. This supervising BSN did not offer any invitation to ask Plaintiff if she had questions, or how orientation was progressing. She conducted meetings with staff but was aloof to her subordinates as her style of manager. Brookdale's BSN, RN did not make any effort to address Plaintiff personally regarding Plaintiff's employment, by using name, asking questions to determine how or if Plaintiff was adjusting to facility and was distant in her approach to supervision.

In comparison, Plaintiff had a different experience with the BSN supervisor at Presbyterian Novant Hospital with her registration renewal. This BSN (believed to be Native American or Caucasian) frequently asked Plaintiff throughout the day how things were going. She was attentive to Plaintiff's needs and did not hesitate to fill out the form (required at that time) to verify Plaintiff's employment. This was Novant's BSN's *cultural perspective* of what professional BSN supervision means. Again, Plaintiff is not implying that the Brookdale BSN was less effective obtaining her position objectives, or not a good supervisor but administering her supervision based on her cultural perspective or bias. What also the Plaintiff is saying, is that

14

Novant's BSN provided a different *cultural perspective* towards her position and the Plaintiff did not experience *adverse impact* with her Novant Health renewal. Plaintiff had a different outcome with renewing her registration for the state registry. This is the concept of the Brown v. Board decision, that having a diverse group of people, (in this case in education) working situation, reduces the chances of disparate outcomes between racially different groups.

Plaintiff recognizes the following sequence of events:

- ***Plaintiff's Charge of file***- Plaintiff signed onto EEOC website on or around September 28, 2022, to ask for federal or job protection when she discovered that her employer, Brookdale Senior Living was not responding to her request that 8 hours of work had been performed and was eligible to continue her registration on the North Carolina State Registry for CNA I and Medication Aide certifications. EEOC then notified Plaintiff that it could take up to 90 days to respond to complaint.

- ***Plaintiff's Attempt at No-Fault Settlement***- Plaintiff's certifications and state registrations for CNA I and Medication Aide expired at midnight September 30, 2022. Plaintiff then contacted two Brookdale Senior Living employees (BSN, RN and an Operations Manager) regarding other employment opportunities under a "Master Nursing License" (if facility held such licenses.) Or, as a possible Licensed Professional Counselor (Associate) for performing similar or same skills that as an added benefit for them could offer Medicare and/or employer billing to insurance companies.

15

- ***Investigation by the EEOC-*** EEOC started with investigator Aaron Hyde who attempted to extract a statement from Plaintiff of a charge under 1,000 words. We communicated by phone and email for a few weeks. A brief statement was finally agreed upon. Plaintiff noticed a difference in Hyde's attitude toward her claim as the months dragged on. Hyde then stated that Plaintiff had been transferred to Waden-Wynn, who did place a phone call to Plaintiff. Investigator Ingrid Waden-Wynn's attitude was one of doubt of Plaintiff's credibility and as you read her statement, it shows bias on the side of the employer, Brookdale Senior Living. After not hearing from the EEOC, Plaintiff did contact a North Carolina US Senator's Office to check on the status of the case. Eventually Plaintiff did receive another investigator's Alexander Perez contact via email.

- ***Plaintiff's Attempt at Conciliation-*** Plaintiff has continued to offer resolution with the Brookdale Senior Living staff (Operation's Manager) for mediation, which request included supporting a higher license as a clinical counselor issued from the state of Georgia (with reciprocity for border state North Carolina), where similar functions would be carried out in the capacity of which the Plaintiff was originally hired for. Plaintiff suggested that the Operation's Manager contact their corporate office and submit a *job requisition*, to authorize a new license and position as mediation for Plaintiff's lapsed certifications. The Operations Manager referred it to another person who may or may not have been a Brookdale corporation personnel employee, who stated that they don't hire

16

counselors and Plaintiff could apply for any positions online. However, Plaintiff indicated that they do need to sign an employment contract for licensure. Working as a returning Team Member for few weeks, Plaintiff had no protection of continuing employment without a written agreement, and no guarantee that she would only work a few weeks and her billing eligibility continuing to be used by employer.

- ***EEOC's Recommendation for Litigation (Right to Sue Letter Issued)-*** Thanks to the Senator's Office, I did receive a response accompanied with a poor evaluative investigation by the EEOC investigator Ingrid Waden-Wynn, however, another EEOC investigator Alex Perez, did issue the right to sue letter from Perez.

17

**Effects and Consequences of Defendant's Discriminatory Actions**

Plaintiff has been a victim of dire consequences, as a result of Brookdale Senior Living's intentional negligence to renew Plaintiff's CNA and Medication Aide registrations. Plaintiff has suffered the following but not limited to, cascade of continuing repercussions:

- ***Loss of income/financial hardship***- The lapsing of Plaintiff's two clinical registrations has caused an undue hardship in her finances. Plaintiff has spent well over $40,000 in education and training for nursing credentials. For some nursing programs, the Certified Nursing Assist is a requirement at application and/or at the point of entrance into a program. Additionally, extra points for nursing school admittance are given for other clinical certificates such as Plaintiff's Medication Aide certificate, which was also lapsed along with the CNA registration. Plaintiff is *still not on state registry*, after a year of trying to reinstate CNA credentials and financial expenditures. Plaintiff cannot reinstate Medication Aide registration *unless* she is on the state of North Carolina's state registry for CNA. Plaintiff has spent at least $2,000 or more to retake coursework and testing, not including the Medication Aide certificate. The results of those attempts are discussed more under in another section of this list. Plaintiff has lost the opportunity to practice and build her skills by the loss of working in a clinical position. Having real time experience in assistant living, assists with preparation for nursing school, when accepted. Plaintiff has lost part-

18

time or full-time capability income (*estimated at $21,216 annually part-time*) and other corporate worker benefits.

- *Loss of two clinical credentials*- The loss of two certificates means a loss in the scope of function working as an unlicensed or non-registered clinical specialist. This forces Plaintiff to work with unskilled labor, as an Education Doctor (EdD.) This can create animosity in a work environment by having someone overqualified and working at a lower level of employment such as care giving.

- *Limits eligibility for acceptance to a nursing program*- Not being on the North Carolina state registry for CNA will omit eligibility for most, if not all community college Associate Degree Nursing (ADN) programs. However, Plaintiff has been readmitted to her former bachelor's degree conferring university with an opportunity for nursing without being on the state's registry. The university catalog does not specify that being on the North Carolina state registry for CNA is necessary currently. Also, all of Plaintiff's earned community college pre-nursing academic prerequisites credits, have been accepted by the university. Plaintiff has *not* been accepted into the university's Bachelor of Science in Nursing program at this time but hopes to be at some point.

- *Setback at goal of obtaining RN licenses as a 66-year-old Candidate*- Reduces chances that Plaintiff will ever reach the goal of qualifying for a RN license based on age and finances alone. Plaintiff is now 67 as of this court filing. Her chances of injury and/or illness increases with age.

19

Plaintiff's chances or license, decrease with age. Plaintiff's nursing Candidacy has been set back at least 12 months and has still not been able to reinstate or re-establish her registration on the North Carolina state registry.

- **Loss of clinical credibility**- Plaintiff maintains that losing her clinical certificates jeopardizes her clinical training and the ability to be employed and/or recognized as a clinical professional. Candidate is finding the door closing at almost every opportunity for working and re-establishing registry credentials.

- **Systemic blacklisting in origin**- It is the opinion of the Plaintiff, as a master's level trained and experienced counselor and former human resources professional that a *pattern of behavior* is being established; whereby the Plaintiff is consistently excluded from employment, job opportunities, licenses and certifications, without being connected to direct performance standards that are measurable and not disparate from other employees or candidates violating rules and regulation of labor, meeting the legal term of blacklisting.

- **Harsh repercussions**- Finally, Plaintiff has had harsh repercussions with her lapsed credential. Plaintiff no longer has the option to work as a medical technician part-time or full time under nursing credentialing. This means Plaintiff would have to work at a lower wage if she could find employment. Plaintiff could possibly work under a higher license as a clinician with similar functions as her lapsed certificates if an employer

20

supports licensing. However, no employer has agreed to support counselor license, despite billing capabilities of the license. Plaintiff is suspicious that corporations are billing insurance companies, state governments, and CMS services with counselor credentials, and is the reason for the reluctance to train or employ individuals with counselor credentials or licenses. Plaintiff has made two attempts to replace CNA certificates with training at considerable costs but is still has been unable to reinstate credentials on state registry.

## Summary

Plaintiff alleges that she was hired at Brookdale Senior Living on September 16, 2022, as a CNA I/Med Tech (). Plaintiff completed all of Brookdale's online and observation orientation tasks and duties for three weeks. Plaintiff at the interview and point of hire relayed to the HR professional who made job offer, that her registration would lapse on September 30, 2022. HR representative advised Plaintiff to relay this information to the RN and proceeded to give me her contact number. No mention of care giving ever came up; Plaintiff is submitting copies of new hire paperwork as proof of condition of employment. Plaintiff spoke to BSN, RN on at least three occasions expressing urgency to address the issue. This BSN supervisor never directly responded to Plaintiff's request. Plaintiff work credentials lapsed on September 30, 2022.

Plaintiff then filled out an EEOC complaint and the first evaluator Aaron Hyde (believed to be Caucasian) interviewed Plaintiff and found reason to accept the charge. However, EEOC reconsidered after months of delaying the case and transferred Plaintiff to a black/African American investigator Ingrid Walden-Wynn who had a different *cultural perspective* of the case.

21

And just as the Brown v. Board of Education case proved in court, Plaintiff received an inferior

treatment with EEOC by changing evaluators forcing Plaintiff to segregate with a black/African

American, who was unable or refused to investigate the facts. Plaintiff is not eluding that the

EEOC investigator is inferior, but her perspective on how to investigate and her point of view

was skewed against Plaintiff as identifying as an American Indian/Native American, causing

Walden-Wynn to overlook or ignore the facts surrounding Plaintiff's complaint. In this matter,

Waden-Wynn as investigator, failed to exercise due diligence by just not reporting accurately

and not fact checking with of North Carolina requirements and process for renewing Plaintiff's

credentials. *The state of North Carolina has a portal to renew a CNA registration and does*

*require that it be done online, and the employer's BSN must be the one to fill out the form.*

The third EEOC investigator, Alexander Perez (believed to be Hispanic) found liability and

issued a right to sue letter, although he hinted that he wasn't sure about the discrimination.

As a result of the EEOC's botched investigation and Brookdale's negligence to

adhere to the state of North Carolina's requirements for CNAs, Plaintiff has suffered

consequences. Those consequences include, loss of income, expenditures for re-certification

including transportation, tuition, fees, training uniforms, state testing and retesting costs over the

last year, lack of clinical employment, and possible setback for nursing program eligibility

increasing the risk that the Plaintiff will not be able to obtain a RN license due to aging.

Plaintiff is seeking punitive damages to include lost wages and future wages if

Plaintiff cannot regain clinical licenses and/or registration. Also, to include at least one year of

estimated full-time wages of a fully credentialed clinical professional as a LPC-RN at $81,000

because Plaintiff is at least one year behind in nursing study due to lapsed credentials and trying

to replace them. Additionally, reimbursement for training costs and testing for CNA I courses,

22

and future Medication Aide training and testing fees, and reimbursement for Licensed Associate Professional Counselor fees in the state of Georgia, since Plaintiff is no longer eligible to work as a CNA/Med Tech under the state of North Carolina Board of Nursing, and attorney's fees if one is appointed or hired by Plaintiff.

Plaintiff is also willing to allow for trial by jury if court and or future attorney advise or order.

## Recognition of Georgia Northern District Court Jurisdiction

Plaintiff requests from court to recognize the Georgia Northern District Court as Jurisdiction for this hearing for the following reasons:

- Neutral locality- In the Northern District of Georgia US District Court in Gainesville, court's location offers neutral locality for a single-issue dispute/argument among parties located in three different state court districts. The legitimacy of the argument itself, has been disputed by bureaucracy, but the bureaucrats admit probable grounds for litigation exists, among their own ranks. Two of the three parties involved are border states of Georgia and parties involved are located in eastern Tennessee, North Carolina, and Georgia (Georgia has jurisdiction over all of Plaintiff's current licenses and clinical license eligibility.) The parties include, Brookdale Senior Living located in High Point, North Carolina, Equal Employment Opportunity Commission located in Greensboro, North Carolina and possibly elsewhere, and Brookdale Corporation located in X, Tennessee.

- A fourth independent party and another reason for Northern Georgia District Court jurisdiction as neutral ground, is because a United States Senator's Office was asked to intervene on Plaintiff's behalf in a neutral position. Plaintiff feels Senator needs to keep

23

his credibility as an arch conservative on what is usually viewed as a liberal arena with discrimination cases. The Senator is required to serve *all* constituents regardless of party preference. Plaintiff requested help from a US Senator as a constituent, to move her case forward when EEOC bureaucracy stalled. Plaintiff does not want to see the Senator blacklisted by his own party because his office investigated to see why a race-based case wasn't moving forward. Recall that one Congressman recently lost his senior conservative position as House Speaker, because he was accused of supporting a liberal agenda.

- General safety of Plaintiff and of all parties are important. Moving the case from close proximity of the former Brookdale Senior Living worksite, helps keep emotions or anger down. Plaintiff asserts that her case has overwhelmingly controversial based on different political, cultural, and clinical views of who she is, any advantages that groups perceive that Plaintiff may or may not have received, and that older workers should not enter the clinical or medical profession. Any race-based case can trigger escalated emotions. Unfortunately, people are not interested in age discrimination as much, or how this demographic population is being treated in the employment, training, and education.

### Pacer Public Access to Court Electronic Records

Plaintiff is requesting permission to have her US Courts Pacer Public Access account enabled for uploading, and responding to or creating any motions, unless an attorning has been appointed or is retained.

24

1

2

3

4

Dated this day of October 11, 2023.

5

6

7 _____

Attorney Name

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Norfolk Local Office**
200 Granby Street, Suite 739
Norfolk, VA 23510
(757) 600-4720
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/17/2023

**To:** Ms. Lynn B. Brooks
460 Sandybrooke Dr.
HIGH POINT, NC 27265
Charge No: 435-2023-00004

EEOC Representative and email: ALEXANDER PEREZ.
Investigator
Alexander.perez@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 435-2023-00004.

On behalf of the Commission,

Digitally Signed By:Elizabeth A. Rader
07/17/2023

Elizabeth A. Rader
District Director